UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 10-295-DLB

DARRIN T. COMMODORE											PLAINTIFF

vs.			MEMORANDUM OPINION & ORDER

MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION										DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions, will remand this action to the Commissioner for a more thorough written analysis.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Darrin T. Commodore filed an application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on February 1, 2008.  (Tr. 35, 77). Plaintiff's earning record shows that he has acquired sufficient coverage to remain insured through December 31, 2010.  (Tr. 37, 130-37).  Plaintiff was 38 years old at the alleged disability onset date of May 8, 2005.  (Tr. 7, 42).  Plaintiff alleges he is unable to work due to pain in his knees and back, sleep apnea, morbid obesity with significant weight loss, edema in his legs, and his inability to stay awake for long periods of time.  (Tr. 40, 81). Plaintiff has a high school education and past relevant work as a produce manager.  (Tr.

1

7, 21). After his alleged disability onset date, he did not work. (Tr. 7).

Plaintiff's claim was denied initially and again on reconsideration. (Tr. 81, 87). At Plaintiff's request, an administrative hearing was conducted on October 29, 2009. Administrative Law Judge ("ALJ") Spangler ruled that Plaintiff was not disabled and not entitled to disability insurance benefits or supplemental security income benefits. (Tr. 1, 43). This decision became the final decision of the Commissioner when the Appeals Council upheld the decision of the ALJ without a hearing on October 28, 2010. (Tr. 27-29).

The present action was filed on December 27, 2010. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 6, 7).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's claim, the

Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B. The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 8, 2005, the alleged onset date. (Tr. 37). At Step 2, the ALJ found that Plaintiff's morbid obesity, lumbar spine degenerative disc disease, osteoarthritis and left knee degenerative joint disease constituted severe impairments within the meaning of the regulations. (Tr. 37-38). The ALJ also found that Plaintiff's allegations of hypertension, obstructive sleep apnea, shortness of breath, dysmetabolic syndrome and depression do not impose more than minimal, if any, limitations on Plaintiff's ability to perform work

functions and, therefore, are not severe impairments. (Tr. 38).

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 39). Specifically, the ALJ evaluated Plaintiff's degenerative disc disease of the lumbar spine, osteoarthritis and degenerative joint disease of the left knee, and concluded that Plaintiff's conditions did not meet or equal the necessary criteria under any subsection of Section 1.00 of Appendix 1. (Tr. 39).

At Step 4, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work, requiring a sit/stand option, is precluded from crawling and climbing ladders, ropes or scaffolds, and with no more than occasional stooping, kneeling, crouching, and climbing of ramps or stairs. (Tr. 39-42). Additionally, the ALJ found Plaintiff's impairments require him to avoid concentrated exposure to vibration or hazards such as dangerous machinery and unprotected heights. (Tr. 39-42). The ALJ also found that Plaintiff has the ability to pay attention and follow written or spoken instructions. (Tr. 39). Based upon this RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a produce manager. (Tr. 42).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ determined that despite Plaintiff's inability to perform his past relevant work, there are a significant number of jobs available to him in the national and regional economies. (Tr. 42-43). Specifically, the VE testified that Plaintiff would be able to perform the job of an assembly bench worker, a machine operator and a general clerk. (Tr. 22, 43). Since the positions identified by the VE were representative of a significant number of jobs in the regional and national economies, the ALJ concluded that Plaintiff was not under a

"disability," as defined by the Social Security Act. (Tr. 43).

### C. Analysis

Plaintiff advances several arguments on appeal. First, Plaintiff alleges that the ALJ erred in finding an inconsistent functional limitation from the Disability Determination Services (DDS) doctor's opinion on which he purportedly relies. Plaintiff further alleges that the ALJ erred in presenting the hypothetical to the vocational expert (VE) with a finding of light work for the Plaintiff. Second, Plaintiff stated that the ALJ erred "if the Defendant now argues" that the ALJ could have used grid Regulations under 201.00 alone for sedentary work. Third, Plaintiff contends that the ALJ erred in failing to find that Plaintiff must elevate his legs, and that he cannot work given this requirement. Next, Plaintiff asserts that the ALJ erred in his evaluation of Plaintiff's subjective complaints, pain and credibility under 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p (1996). Finally, Plaintiff argues that the ALJ "erred vocationally" when he denied benefits under Step 5 of the evaluation of disability, found at 20 C.F.R. § 404.1520. Each of these arguments is addressed in turn.

### 1. Further Clarification From The ALJ Is Required to Determine Whether He Properly Established an RFC of "Light Work"

Plaintiff argues that the ALJ erred in finding an RFC suitable for light work if he was relying on the reports of the DDS consultants as he claimed. Both consultants found Plaintiff could stand or walk for at least two hours of an eight hour workday, though the ALJ found six hours of standing/walking per workday. (Doc. # 6, at 2). Plaintiff further alleges the ALJ erred in presenting a hypothetical to the VE to find suitable 'light work' jobs on the basis of this assessment of Plaintiff's RFC.

In his decision, the ALJ found an RFC for Plaintiff which included the ability to stand/walk for six hours during an eight hour workday, further requiring a sit/stand option. (Tr. 41; *see* SSR 83-12). The ALJ asserts that his assessment is supported by the opinions of the DDS medical consultants. However, their physical RFC opinions find an ability to stand/walk for only at least two hours during an eight hour workday. (Tr. 42; *see* Tr. 247, 314). Despite this obvious discrepancy, the ALJ did not articulate with any degree of specificity why he did not credit the finding of two hours of standing/walking in his own assessment, and made no comment on the seeming inconsistency between Dr. Brown's finding and his own.

ALJ Spangler does not state that he is adopting the opinion of Dr. Brown outright, however, he grants "persuasive weight" to Dr. Brown's assessment, finding his opinion to be "consistent with the medical record as a whole." (Tr. 42; *see* 20 C.F.R. § 404.1527). More notably, the ALJ states that "the doctor's assessment is consistent with the residual functional capacity findings" of his own. (Tr. 42). However, ALJ Spangler does not acknowledge or explain the departure concerning the standing/walking limitation, nor provide any reasoning why the findings can and should be considered 'consistent' with one another. (Tr. 42).

The Court recognizes that the ALJ is ultimately responsible for assessing a Plaintiff's RFC. 20 C.F.R. § 404.1546(c). However, he must base his assessment on "*all* of the relevant evidence in the case record." SSR 96-8p; *see* SSR 96-6p. Additionally, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p. The ALJ must articulate the reasons for his

6

findings, particularly when they deviate from the sources he purports to rely on. In the context of purely conclusory statements, this Court cannot conduct a meaningful review of whether substantial evidence supports the ALJ's decision. The Court finds that the ALJ's conclusion that "the totality of the evidence is consistent with the residual functional capacity that I have determined," and further, that "after careful consideration of the entire record" there is no evidence of total disability, is insufficient to meet the narrative requirement. Accordingly, the Court finds that the ALJ's decision failed to provide the minimal articulation needed to support his conclusion and, therefore, a remand is necessary.

Though the hypothetical posed to the VE accurately described Plaintiff's functional limitations as determined by the ALJ, whether these findings are supported by substantial evidence requires further clarification from the ALJ, as noted above. This claim is addressed further *infra* at II.C.4.

### 2. The ALJ Properly Refused to Find that Plaintiff is Medically Required to Elevate His Legs and Therefore Cannot Work

Plaintiff asserts that the ALJ erred by not finding that Plaintiff had a "medical need" to elevate his legs during the workday when determining what jobs would be available to Plaintiff. This argument is unpersuasive. In his hearing, Plaintiff testified that he was advised by a doctor to lay down and elevate his feet when his legs were swollen. (Tr. 12-13). However, the significant functional limitation advanced by Plaintiff is uncorroborated by objective medical evidence.

7

The medical record does demonstrate that Plaintiff suffers from edema in his legs, specifically around the feet and ankles. (*See, e.g.*, Tr. 217, 226, 276-77). The record further indicates that according to Plaintiff's reports, elevation of the feet has provided him with some relief. (Tr. 226, 263, 265 ). However, there is no medical evidence that supports a finding of such a significant restriction. The ALJ need only incorporate those limitations in his RFC assessment which he has deemed credible. *Stanley v. Sec'y Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994). ALJ Spangler considered Plaintiff's testimony as well as the objective medical evidence, noting in his decision that Plaintiff suffered from "mild edema," but also finding that it was "reportedly stable with medication." (Tr. 41). This finding is supported by substantial evidence.

The argument that this additional restriction precludes Plaintiff from working arises from the VE's answer to two hypothetical questions posed by Plaintiff's attorney. At the hearing, Plaintiff's attorney asked the VE whether the requirement to "lie down for at least an hour each day" or, alternatively, to "work with his legs elevated at least at waist level" would affect the jobs available to Plaintiff, and the VE postulated that it would eliminate the available positions. (Tr. 22). This additional limitation, however, was not adopted as a finding by the ALJ as it is not supported by objective medical evidence and is merely a product of Plaintiff's testimony. Because the ALJ found Plaintiff's subjective testimony inconsistent with the medical record, he was free to disregard the VE's answer to this hypothetical. *See Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir.1987)). Accordingly, the ALJ properly refused to find that it is medically necessary for

8

Plaintiff to elevate his legs during the workday, and did not err in disregarding the effect of such limitation on the availability of jobs.

> 3. **On Remand, the ALJ Should Further Clarify His Evaluation of Plaintiff's Subjective Complaints, Pain and Credibility**

Among the errors alleged, Plaintiff complains that the ALJ did not evaluate his subjective complaints, pain and credibility under the appropriate standards. Specifically, Plaintiff contends the ALJ discredited his subjective complaint testimony without sufficient explanation in violation of Social Security Ruling 96-7p.

Credibility determinations are generally reserved for the ALJ and should not be discarded lightly. *Jones*, 336 F.3d at 476. Meaningful review, however, requires more than "blanket assertions that the claimant is not believable." *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Social Security Rule 96-7p requires the ALJ to explain his credibility determination so that it is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p.

After review of the record, the ALJ granted weight to Plaintiff's alleged symptoms, however he noted that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 40-41). In making his assessment, ALJ Spangler indicated that he considered the entire record, including "all

symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence." (Tr. 39). Although this particular alleged error may not dictate remand in isolation, because the case is being remanded by the Court on other grounds, the ALJ should take this opportunity to further clarify the basis for these findings.

### 4. Further Clarification is Needed to Determine Whether The ALJ Properly Denied Benefits at Step 5 in the Evaluation of Disability

Plaintiff argues that the ALJ did not satisfy his burden to show other work that Plaintiff could engage in, and therefore erred in denying benefits at Step 5 of the evaluation. Plaintiff's contention of error results from the purportedly improper hypothetical questions posed to the VE to determine available work. (Doc. # 6, at 10).

To meet his burden at Step 5 of the sequential evaluation, the ALJ must make a finding "'supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). A VE's testimony in response to a hypothetical question will provide substantial evidence of a claimant's RFC to perform work in the national economy where the question posed accurately reflected the claimant's physical and mental impairments. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with the ALJ's assessment of what the claimant "can and cannot do"). It is well established, however, that an ALJ need only include those restrictions which enjoy support when assessed against the backdrop of the entire record of objective medical evidence.

*Stanley*, 39 F.3d at 118-19 (in formulating a hypothetical question, the ALJ need only incorporate those limitations which he has deemed credible).

This argument relies heavily on the claims made above that the hypothetical posed to the VE failed to accurately represent Plaintiff's functional limitations and restrictions. Plaintiff re-asserts his position that the questions posed to the VE were "improper because they assumed an ability to do light work with 6 hours a day of standing/walking . . . [and] because they left out the supported need to elevate the legs during the work day." (Doc. # 6, at 10). Although the latter restriction was properly excluded from the hypothetical question posed to the VE (*supra* at II.C.2), further clarification on the former is necessary. In view of the Court's above findings, and the determination that this action must be remanded to the ALJ for further clarification, it is premature to rule on this claim.

### III. CONCLUSION

**IT IS ORDERED** as follows:

1. Plaintiff's motion for summary judgment (Doc. # 6) be, and it hereby is, **granted in part** as to Plaintiff's request for a reversal of the Commissioner's decision, and **denied in part** as to his request for a court ordered award of benefits;

2. Defendant's motion for summary judgment (Doc. # 7) be, and it hereby is, **denied**;

3. This action be, and it is, hereby **remanded** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to provide a more thorough written analysis, specifically articulating reasons for the stated findings.

This 13th day of October, 2011.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\Covington\2-10-295-Commodore MOO.wpd